UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ONEBEACON AMERICA INSURANCE )
COMPANY, )
         )
      Plaintiff, )
         )
      v. )    12 C 4437
         )
CITY OF ZION, ILLINOIS, LANE )
HARRISON, DELAINE ROGERS, )
GRAND SLAM SPORTS & )
ENTERTAINMENT LLC, and )
GREEN BAY CROSSING, LLC, )
         )
      Defendants. )

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter comes before the Court on the motion for summary judgment of

Plaintiff OneBeacon America Insurance Company ("OneBeacon") on Counts I and III

of its second amended complaint pursuant to Fed. R. Civ. P. 56 ("Rule 56") against

Defendants Lane Harrison ("Harrison") and Delaine Rogers ("Rogers") (collectively

the "Individual Defendants") and the City of Zion (the "City" or the "City of Zion")

(all Defendants are referred to collectively as "the Zion Defendants"). For the

following reasons, OneBeacon's motion for summary judgment is granted on Count I

as to the City of Zion, granted on Count III in its entirety, and otherwise denied.

Count II remains. The Court declares that OneBeacon has a duty to defend the

Individual Defendants in the underlying state court lawsuit, but does not have a duty to defend the City of Zion in that matter.

## BACKGROUND

### I. Facts

The following facts are taken from the parties' respective statements, responses and exhibits filed pursuant to Local Rule 56.1 ("Rule 56.1"). We review each Rule 56.1 statement and disregard any argument, conclusion or assertion unsupported by the evidence in the record. The Court is mindful of its duty to weigh the credibility of the evidence presented by all parties and only relies on relevant, admissible evidence when ruling on the motion for summary judgment.

On November 22, 2011, GSSE brought suit against the Zion Defendants, GBC and others in the Circuit Court of Lake County. On December 6, 2013, GSSE amended its complaint (the "Underlying Complaint"), seeking recovery, for, *inter alia*: (i) fraud against Harrison and Rogers (Count III); (ii) breach of contract against the City of Zion (Count V); and (iii) civil conspiracy against Harrison and Rogers (Count XI). After the state court proceedings commenced, the Zion Defendants attempted to tender the defense of their case to their insured, OneBeacon. OneBeacon refused to defend the case and subsequently filed this declaratory judgment action on April 24, 2014. In OneBeacon's three-count second amended complaint for declaratory judgment (the "Federal Court Complaint") against the Zion Defendants, Grand Slam Sports and Entertainment LLC ("GSSE") and Green Bay Crossing, LLC

("GBC"), OneBeacon seeks a declaration that it did not owe a duty to defend, or indemnify, the Zion Defendants with respect to the Underlying Complaint and GBC's counterclaim.

OneBeacon alleges in the Federal Court Complaint that it is a corporation with its principal place of business in Minnesota. It was recently re-domiciled in Pennsylvania. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because all defendants reside in the Northern District of Illinois. The City of Zion is a municipality in Illinois. Harrison and Rogers are citizens of Illinois and both City of Zion officials. Harrison was the mayor of the City of Zion and Rogers acted as the Economic Development Director. GSSE is an Illinois limited liability company whose sole member is a citizen of Illinois. GBC is a Wisconsin limited liability company in the business of real estate acquisition and development whose members are citizens of Illinois and Wisconsin.

The parties generally do not disagree as to the facts, which primarily consist of the terms of the Policy and the pleadings in the underlying state court lawsuit. The only significant factual disagreement regards whether certain allegations support a conclusion that all statements made by the Zion Defendants were intentionally false material representations. However, it is important to thoroughly reference the Underlying Complaint and the insurance policy (the "Policy") OneBeacon issued to the City of Zion for insurance coverage purposes.

## A. Allegations in the Underlying Complaint

The Court must decide whether OneBeacon had a duty to defend based on the allegations of the Underlying Complaint as they are currently pled, not based on the possibility of future discovery and/or amendments to the complaint. *Conn. Indem. Co. v. DER Travel Serv., Inc.*, 328 F.3d 347, 350-51 (7th Cir. 2003) ("[I]t is the actual complaint, not some hypothetical version, that must be considered."

According to the allegations in the Underlying Complaint, GSSE operated a minor league baseball team known as the Lake County Fielders (the "Fielders"). In 2006, Rogers, as the Director of Economic Development for the City of Zion, approached GSSE's manager to ask if he would be interested in providing a start-up minor league baseball team in the City of Zion because the City was interested in developing a stadium project (the "Stadium"). At the time, no professional baseball team was operating, or expected to operate in the City of Zion. During negotiations, GSSE's manager allegedly insisted that the Stadium, with its concessions, naming rights, advertising and other financial advantages was a necessity for the team. GSSE alleges that City officials, including, but not limited to Harrison and Rogers, repeatedly agreed to construction of the Stadium in consideration of the Fielders playing in Zion. As a result, GSSE's manager agreed to have the Fielders play in return for the City of Zion's promise to build the Stadium for the team to use. After a long and arduous period of temporary facilities, funding issues, and talks of relocation, on March 21, 2011, the City of Zion Council approved the sale of bonds to

finance the Stadium project. On March 29, 2011, the City entered into a construction contract with Olson General Contractor (the "Olson Contract") to construct the Stadium in 2011 for $5.6 million dollars, which was agreed upon by GSSE.

GSSE alleges that sometime in the first five months of 2011, Harrison, Rogers and Richard DeLisle, a real estate developer, determined that the exposure of the financial flaws in the new proposed site for the Stadium made it too risky to allow execution of the bond issue for construction of the Stadium. According to GSSE, Harrison, Rogers and DeLisle then privately determined that the bond issuance for the construction of the Stadium would not be pursued, and no Stadium would be built in 2011.

GSSE further alleges that during these first five months of 2011, Harrison and Rogers, along with DeLisle, were on notice that absent the building of the Stadium, GSSE would not field a team for the 2011 season. GSSE contends that Harrison and Rogers knew that operating the Fielders in the 2011 season without a completed Stadium would result in an immediate collapse of the entire project, creating extensive negative publicity for Harrison, Rogers and DeLisle, in addition to potentially destroying a possibility of substantial land appreciation for GBC. Accordingly, GSSE alleges that Harrison, Rogers and DeLisle sought alternative plans to relieve GBC of its debt obligations on the Stadium's purported site and agreed to engage in affirmative and knowing false representations and material omissions to GSSE to conceal from it that the Stadium would not be built for the 2011 season. GSSE

alleges that Harrison, Rogers and DeLisle knew that operating the Fielders during the 2011 season without a completed Stadium would result in substantial economic losses for GSSE, as had occurred in the 2010 season, and could possibly leave GSSE without financial capital to maintain the team after 2011. They allegedly agreed amongst themselves to seek to establish a new or relocated baseball team with fresh financial capital to replace GSSE's baseball team after the 2011 season. However, Rogers also allegedly made repeated statements and representations to GSSE and the general public, by way of the radio, that construction of the Stadium was ready to begin, as also shown in a written letter from March 10, 2011. In the March 10, 2011 letter, Rogers represented to GSSE that: (i) the sale of bonds for construction of the Stadium would occur the following week; (ii) the temporary Stadium facilities would be completed by the first week of April 2011 for use by GSSE's team; (iii) the Olson Contract was signed; (iv) the primary Stadium cement and steel components were then currently being fabricated off site; and (v) the Stadium would be completed by early June 2011, all of which GSSE argues were completely false. Additionally, a construction buffer zone fence was built around the Stadium. On two separate occasions in April 2011, the City's finance director sent written confirmation to Harrison, Rogers, the City Council and GSSE's manager that the $7.5 million bond sale was in a position to commence the following week and that the funds from the sale of those bonds would be wired to the City within a few days. On two separate occasions in June 2011, the City's finance director allegedly sent written memos to

Harrison, the City Council and GSSE's manager stating the imperative need to commence sale of approved bonds in order to commence construction of the Stadium. According to GSSE, at no time during the months of March through June 2011 did Harrison or the City indicate to GSSE that the bond sale would not move forward or that construction of the Stadium was not moving forward. No bonds were ever issued or sold pursuant to the City Council approval and direction and Stadium construction never occurred. Two weeks after the start of the 2011 season, the City started to build some temporary facilities. During 2011, three of the four members of the Zion City Council allegedly told GSSE's manager that they were puzzled by Harrison's failure to move forward on the bond sale approved by the Council three months earlier. Two of those Council members allegedly stated to GSSE's manager that Harrison was not returning their telephone calls or requests for meetings on the subject.

GSSE claims that it reasonably relied on the Individual Defendants' misrepresentations and fielded a baseball team for 2011, all while the City never fulfilled the construction contract to build the Stadium. GSSE alleges that Harrison and Rogers undermined the financial condition of GSSE, and attacked its reputation, as additional means of causing the termination of any relationship between GSSE and the City of Zion. As a result of the inadequate facilities and the missing Stadium, advertisers and ticket buyers allegedly revoked purchase money commitments to GSSE for tickets and events in the 2011 season, which created severe financial loss and critically strained the ability of GSSE to maintain cash flow to operate the

baseball team during the 2011 season. During the 2010 season, GSSE advanced over $90,000 on the City's behalf for expenses at the Stadium site that were the City's responsibility, made rent payments totaling approximately $40,000 under the operating agreement after the 2010 season and allowed the rent to be credited against the far greater amounts owed by the City to GSSE, all without objection from the City. During the 2011 season, Harrison allegedly caused the City to publically claim that GSSE still owed $60,000 rent from the 2010 season, which the City stated caused the significant delay in Stadium construction. At that time, however, GSSE alleges that the City still owed it $90,000. GSSE offered to settle with the City, but the City rejected the offer. Later in 2011, the City reimbursed GSSE $70,000 of the $90,000 that had been owed to GSSE for more than a year, but allegedly ceased all communications with GSSE regarding the Stadium. GSSE estimates that it lost approximately $500,000 in operation of the Fielders team during the 2011 season and is effectively at a standstill based on the City's alleged actions.

Counts III, V and XI are the claims in the Underlying Complaint that pertain to the instant matter. In Count III, GSSE alleges a fraud claim against Harrison and Rogers for engaging in a series of false material representations in connection with the proposed construction of the Stadium. These misrepresentations include that the City would build the Stadium, the sale of bonds for construction of the Stadium would occur in March 2011, the temporary Stadium facilities would be completed by the first week of April 2011 for use by the Fielders, the Olson contract was signed, the

Stadium's construction was in production and the Stadium would be completed by early June 2011 for home games. GSSE alleges that Harrison and Rogers' omissions were material and comprised essential parts of a fraudulent scheme and were intended to mislead GSSE. It also claims that as public officials engaging in criminal conduct, Harrison and Rogers had a duty to disclose their conduct and all material omissions of material facts that would have made their actual statements not misleading. In specific reliance upon these material misrepresentations, GSSE fielded a 2011 team and suffered damages.

In Count V, GSSE states that it is a third party beneficiary of the Olson Contract. GSSE alleges that the City materially breached the contract by its failure to engage in reasonable measures to build the Stadium, and effectively abandoned the construction of the Stadium. In Count XI, GSSE alleges that Harrison, Rogers, DeLisle and GBC engaged in a civil conspiracy by conducting the "2011 Fake Stadium Scheme" with the alleged goal of causing GSSE to operate the Fielders team during the 2011 season by means of fraudulent misrepresentation, material omissions, bribery, and intentional misuse of public services and public resources. Regarding the bribery allegations, GSSE claims Harrison illegally accepted bribes that were given to obtain his cooperation, participation and use of municipal powers in fraud and conspiracy. Likewise, there is also an allegation that Rogers illegally accepted bribes to reward her for, and to obtain her participation in, the fraud and conspiracy. These

alleged agreements were made between January and March 2011 to conceal from GSSE that the Stadium would not be built.

GBC has brought a counterclaim for breach of contract against the City of Zion. In its counterclaim, GBC alleges that it entered into a ground lease with the City, which the City anticipatorily breached by not building the Stadium as the lease required, and by manifesting an intent not to do so. GBC asks for indemnification by the City of the claims made against GBC by GSSE, pursuant to an indemnification clause in the contract. GBC specifically pleads that the City has "clearly, definitely, and unequivocally manifested an intent not to perform its obligation to build the Baseball Stadium under the Ground Lease and has therefore [ ] anticipatorily repudiated and breached the Ground Lease." GSSE seeks damages against GBC arising, in whole or in part, from the City's failure to build the Stadium. GBC alleges that in the event that GSSE recovers any damages from GBC resulting from the City's failure to build the Stadium, GBC is entitled to recover the full amount of any such damages, plus attorney's fees and costs of defense from the City.

### B. State Court Decision

The parties dispute the admissibility of the Circuit Court of Lake County's May 13, 2014 dismissal of Count V of the Underlying Complaint. OneBeacon argues that this information is extraneous evidence and immaterial to its pending motion for summary judgment. According to the Circuit Court of Lake County's electronic docket, on May 8, 2015, the court entered an agreed order "dismissing cause." The

parties failed to supplement the record in this case to reflect this activity in the state court case.[1]

## C. Policy

### 1. CGL Section

At the time of the foregoing incident, the Zion Defendants were covered by Policy number 791-00-03-58-0000, issued by OneBeacon to the City of Zion for the period of December 15, 2010 to December 15, 2011. The Policy contains a portion entitled commercial general liability form for government risks (the "CGL Section"). OneBeacon provided the Court a copy of the Policy issued to the Zion Defendants, and the relevant parts of the CGL Section are listed below:

COVERAGE B PERSONAL AND ADVERTISING LIABILITY

1. Insuring Agreement

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any "claim" that may result. But:

>> (1) The amount we will pay for damages is limited as described in SECTION III – LIMITS OF INSURANCE; and

>> (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A, B, C or medical expenses under Coverage D.

---

[1] Local news media reported that the state court case recently settled for $55,000 in return for a release of GSSE's remaining claims pending against the City of Zion.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A, B and C.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

\* \* \*

In the Policy's section of definitions, "Personal and advertising injury" is defined as an injury, including a consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. "Publication" of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. "Publication" of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \*

Publication is defined as "any method of announcing or disseminating any material to

any third party."

\* \* \*

The Coverage B Personal and Advertising Injury liability had specific exclusions, which are listed below:

2. Exclusions

This insurance policy does not apply to:

a. Knowing Violation Of Rights Of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

This exclusion does not apply to "personal and advertising injury" caused by malicious prosecution.

b. Breach Of Contract

"Personal and advertising injury" arising directly or indirectly out of, or in any way related to breach of contract, except an implied contract to use another's advertising idea in your "advertisement", or any "claim" against any insured arising directly or indirectly out of, or in any way related to tortious interference with a contract or business relations.

c. Contractual Liability

"Personal and advertising injury" for which any insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

\* \* \*

n. Material Published With Knowledge of Falsity

"Personal and advertising injury" arising directly or indirectly out of, or in any way related to "publication" of material, if done by or at the direction of the insured with knowledge of its falsity.

\* \* \*

Additionally, Coverage B: Personal and Advertising Injury Liability, Section II(2)(a), includes Harrison and Rogers as insured officials of the City of Zion "while performing duties related to the conduct of [the City's] business." In Section II(2)(b), the Policy also insures the City's "current or previously elected or appointed officials of [the City's] operating authorities, boards, commissions, districts or any other governmental units, but only for acts within of the scope of their employment by [the City] or while performing duties related to the conduct of [the City]."

## 2. E&O Section

The Policy also contains a section entitled Public Officials Error and Omissions Coverage Form Claims-Made for Government Risks (the "E&O" Section). Harrison and Rogers, as officials of the City, are insured under the E&O Section, "but only for the conduct of their duties as [City's] elected or appointed officials." The relevant parts of the E&O Section are listed below:

SECTION I – COVERAGES

A. Insuring Agreement – Liability for Wrongful Acts

1. We will pay those sums that the insured becomes legally obligated to pay as "damages" resulting from a "wrongful act" to which this insurance applies. This insurance DOES NOT apply to any "claim" resulting from a "wrongful act" which takes place in whole or in part prior to the Retroactive Date shown in the Declarations or subsequent to the termination of this policy.

2. We will have the right and duty to defend the insured against any "suit" seeking those "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" for a "wrongful act" to which this insurance does not apply. We may, at our discretion, investigate any "wrongful act" and settle any "claim that may result.

\* \* \*

The E&O Section also contains specific exclusions:

SECTION III – EXCLUSIONS

This insurance does not apply under either Coverage A or Coverage B or Coverage C to:

\* \* \*

4. Contracts

Any "claim" arising directly or indirectly out of, or in any way related to liability assumed under any contract or agreement of breach of contract to which the insured is a party or a third-party beneficiary, or any representations made in anticipation of such contract or agreement of any "claim" against any insured arising directly or indirectly out of, or in any way related to tortious interference with a contract or business relations. However this exclusion does not apply to liability the insured would have in the absence of the contract or agreement.

5. Criminal Acts

Any "claim" arising directly or indirectly out of, or in any way related to a dishonest, malicious, fraudulent, or criminal act, or the willful violation of any statute, ordinance or regulation committed by or with the knowledge of the insured.

However, we will defend the insured for a "suit" subject to the other terms of this coverage part until either a judgment or final adjudication established such an act or the insured confirms such an act.

\* \* \*

19. Profit, Advantage or Remuneration

Any "claim" arising directly or indirectly out of, or in any way related to any insured gaining any profit, advantage or remuneration to which that insured is not legally entitled.

\* \* \*

### D. Federal Court Case's Procedural History

In the Federal Court Complaint, OneBeacon first argues in Count I that the Policy issued to the Individual Defendants did not extend coverage to damages alleged in the Underlying Complaint. OneBeacon claims it has no duty to defend the Zion Defendants under the CGL Section because the claims do not allege a personal and advertising injury, and because the claims are excluded by the "knowing violation of rights of another," "breach of contract," and "the material published with knowledge of falsity" exclusions contained in CGL Section. OneBeacon further argues it has no duty to defend or indemnify the Zion Defendants under the E&O Section because the claims are excluded by the "contracts" and "profit, advantage or remuneration" exclusions. In Count III of the Federal Court Complaint, OneBeacon denies it has any duty to defend the City of Zion against GBC's counterclaim under the CGL Section because it does not allege a personal and advertising injury and is excluded by the "breach of contract" and "contractual liability" exclusions in Coverage B.

On September 9, 2014, this Court denied the Zion Defendants' motion to dismiss, or in the alternative, for a more definite statement. On January 29, 2015, OneBeacon filed the instant motion for summary judgment on Counts I and III of the Federal Court Complaint for declaratory judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the movant bears the burden of proof at trial. *Id.* at 325. The non-movant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with documentary evidence. *Id.* A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

## DISCUSSION

OneBeacon argues that it has no duty to defend the Zion Defendants in the underlying state court case because coverage has not been triggered and various exclusions apply. The Zion Defendants argue that coverage has in fact been triggered under both the "Personal and Advertising Injury Liability" portion of the CGL Section

and the E&O Section. The Zion Defendants also contend that the exclusions do not permit OneBeacon to avoid its duty to defend.

## I. Applicable Case Law

### A. Duty to Defend

The parties agree that Illinois law controls the construction and application of the Policy's terms. The burden is on the insured to prove that a claim falls within the coverage of the Policy. *Axiom Ins. Managers, LLC v. Capitol Specialty Ins. Corp.*, 876 F.Supp.2d 1005, 1008 (N.D. Ill. 2012) (citing cases). The insurer has the burden of proving that an exclusion applies, while the insured has the burden of proving that an exception to an exclusion restores coverage. *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 347 (7th Cir. 2010).

It is well-settled that to decide whether an insurer has a duty to defend an action against the insured, a reviewing court must compare the allegations of the Underlying Complaint to the relevant portions of the Policy. *Outbound Marine Corp v. Liberty Mutual Ins. Co.*, 154 Ill. 2d 90, 108 (1992). However, "[f]ocusing on the complaint is necessary because the insurer must determine whether it has an obligation to defend at the outset of the litigation." *Travelers Ins. Companies v. Penda Corp.*, 974 F.2d 823, 827 (7th Cir. 1992).[2] If the Underlying Complaint alleges facts that fall "within or

---

[2] Since the duty to defend is initiated at the outset of litigation, whether or not the breach of contract claim against the City of Zion was later dismissed by the state court is irrelevant. *See Atlantic Mut. Ins. Co. v. American Academy of Orthopaedic Surgeons & Scoliosis Research Society*, 315 Ill. App. 3d 552, 567 (2000) ("where summary judgment is sought in the context of

*potentially* within" the coverage of the Policy, the insurer is obligated to defend its insured even if the allegations are "groundless, false, or fraudulent." *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 3d 64, 73 (1991) (emphasis in original). The Underlying Complaint need only set forth sufficient facts to establish a policy-covered offense. *Country Mut. Ins. Co. v. Ticketsnow.com*, No. 1-06-1135, 2007 WL 7595190, at *6 (Ill. App. Ct. June 29, 2007). Also, the duty to defend arises "even if only one such theory is within the potential coverage of the policy." *Wilkin Insulation Co.*, 144 Ill. 2d at 73. An insurer may not justifiably refuse to defend an action against the insured "unless it is *clear* from the face of the underlying complaint[ ] that the allegations fail to state facts which bring the case within, or potentially within the policy's coverage." *Wilkin Insulation Co.*, 144 Ill. 2d at 73 (emphasis in original).

In determining if the allegations in the Underlying Complaint meet the threshold requirement, both the Underlying Complaint and the Policy must be liberally construed in favor of the Zion Defendants. *Wilkin Insulation Co.*, 144 Ill. 2d at 73. Where the words in the policy are clear and unambiguous, "a court must afford them their *plain, ordinary, and popular meaning*." *Outboard Marine Corp*, 154 Ill. 2d at 108 (emphasis in original); *see also Lexmark Int'l Inc. v. Transp. Ins. Co.*, 327 Ill. App. 3d 128, 135-36 (2001) ("We give little weight to the legal label that characterizes the underlying allegations. Instead, we determine whether the alleged

a declaratory judgment action to determine whether an insured has a duty to defend, the use of extrinsic evidence is inappropriate").

conduct arguably falls within at least one of the categories of wrongdoing listed in the policy."). If a provision is subject to more than one meaning, it is considered ambiguous, and all ambiguities and doubts must be resolved in favor of the insured. *Wilkin Insulation Co.*, 144 Ill. 2d at 74.

### B. Exclusionary Provisions

"Once the insured has demonstrated coverage, the burden then shifts to the insurer to prove that a limitation or exclusion applies." *Addison Ins. Co. v. Fay*, 232 Ill. 2d 446, 453-54 (2009); see also *Johnson Press of America, Inc. v. N. Ins. Co. of New York*, 339 Ill. App. 3d 864, 871-72 (2003) (burden rests with insurer to demonstrate applicability of exclusion; courts will liberally construe any doubt as to coverage in favor of insured and against insurance company, especially when insurer seeks to avoid coverage based on an alleged exclusion). "Exclusion provisions that limit or exclude coverage must be construed liberally in favor of the insured and against the insurer." *Pekin Ins. Co. v. Miller*, 367 Ill. App. 3d 263, 267 (2006). Where the insurer relies on a provision that it contends excludes coverage to reject a tender of defense, we review the applicability of the provision to ensure it is " 'clear and free from doubt' that the policy's exclusion prevents coverage." *Atlantic Mut. Ins. Co.*, 315 Ill. App. 3d at 560.

## II. Coverage Under the Policy for GSSE's Underlying Complaint

### A. E&O Section

In the Policy, there are two coverage sections that could possibly trigger coverage. The Court begins with the E&O Section, which covers "Liability for Wrongful Acts." The E&O Section provides that OneBeacon "will pay those sums that the insured becomes legally obligated to pay as 'damages' resulting from a 'wrongful act' to which this insurance applies." The Policy also defines an "insured" to include the City of Zion and its employees for acts "within the course and scope of their employment." Additionally, OneBeacon:

> will have the right and duty to defend the insured against any 'suit' seeking those "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" for a "wrongful act" to which this insurance does not apply.

OneBeacon concedes that the Underlying Complaint alleges wrongful acts on the part of the insureds, so coverage is uncontested, but insists that two exclusions preclude its duty to defend. It is OneBeacon's burden to prove the exclusions apply. First, OneBeacon argues that it does not have a duty to defend because the contracts exclusion applies to both the City of Zion and the Individual Defendants. Second, OneBeacon proclaims that the profit, advantage or remuneration exclusion also pertains to coverage of both the City of Zion and the Individual Defendants. The foregoing Policy language allows us to look at whether the Contracts Exclusion applies separately to the City of Zion and the Individual Defendants. *See Williams v.*

*Am. Country Ins. Co.*, 359 Ill. App. 3d 128, 139-40 (2005) (where the court found that the policy language "allows coverage to be excluded as to one insured and remain in effect as to the other insured" under the doctrine of *respondeat superior*).

### 1. Contracts Exclusion

We will begin with Exclusion 4 (the "Contracts Exclusion"). As a reminder, the Contracts Exclusion states:

4. Contracts

Any "claim" arising directly or indirectly out of, or in any way related to liability assumed under any contract or agreement of breach of contract to which the insured is a party or a third-party beneficiary, or any representations made in anticipation of such contract or agreement of any "claim" against any insured arising directly or indirectly out of, or in any way related to tortious interference with a contract or business relations. However this exclusion does not apply to liability the insured would have in the absence of the contract or agreement. (Emphasis added).

Regarding the applicability of the Contracts Exclusion to the City of Zion, OneBeacon contends that it had no duty to defend because Count V of the Underlying Complaint is a breach of contract claim against the City of Zion, which the Policy undoubtedly excludes. Out of all the relevant counts in the Underlying Complaint, Count V is the only one that is alleged solely against the City of Zion, claiming that the City of Zion "has engaged in a material breach of the Olson Contract by its failure to engage in reasonable measures to build the Stadium, and effectively abandoning the construction of the Stadium." In response to OneBeacon's contention that the

Contracts Exclusion applies, the Zion Defendants focus on the inapplicability of this exclusion to the Individual Defendants and not the City of Zion.

After review of Count V in the Underlying Complaint, and construing the Contracts Exclusion liberally in favor of the City of Zion and against OneBeacon, it is clear and free from doubt that the breach of contract claim in the Underlying Complaint would necessarily fall within the Contracts Exclusion so as to preclude coverage of the City of Zion. *Santa's Best Craft, LLC*, 611 F.3d at 348. The alleged wrongful acts of the City of Zion described in the Underlying Complaint, would not exist but for the breach of contract. *See Axiom Ins. Managers, LLC*, 876 F. Supp. 2d at 1016 ("Illinois case law supports that 'arising out of' is ambiguous and, when used in an exclusion, should be construed as requiring but for causation since that favors the insured."). OneBeacon was correct in its assessment that it did not have the duty to defend the City of Zion under the E&O Section based on the Contracts Exclusion.

As for the Individual Defendants, the applicability of the Contracts Exclusion is less straightforward. There is not a count for breach of contract in the Underlying Complaint against the Individual Defendants. However, in Count III, for fraud, and Count XI, for civil conspiracy, the "Olson Contract" is mentioned in the general allegations portion and briefly as an "overt act" in Count XI. OneBeacon insists that the Court read the complaint as a whole and find that the allegations against the Individual Defendants are enough to negate its duty to defend. Contrarily, the Individual Defendants focus on the last sentence in the Contracts Exclusion: "[ ] this

exclusion does not apply to liability the insured would have in the absence of the contract or agreement." This exception to the exclusion did not pertain to the City of Zion because the only claim in the Underlying Complaint against it was for breach of contract. The Individual Defendants maintain that if the allegations about the Olson Contract were removed from Counts III and XI in the Underlying Complaint that coverage would still exist for wrongful acts unrelated to any contract.

As noted above, the Underlying Complaint alleges numerous other wrongful acts of the Individual Defendants, including, but not limited to, disparaging publications about GSSE to the public, the failed bond issue for construction of the Stadium, and the choice to switch the stadium site, none of which relies on a provision in the Olson Contract. The Court cannot conclusively determine that such alleged wrongful acts would not have arisen but for a breach of contract. Accordingly, there remains sufficient uncertainty as to the applicability of the Contracts Exclusion to the Individual Defendants, and we therefore, cannot decisively apply the Contracts Exclusion to the claims against them. Since the Contracts Exclusion only exempts OneBeacon from defending the City of Zion, we must now look at whether another exclusion prevents OneBeacon's duty to defend the Individual Defendants.

### 2. Profit, Advantage or Remuneration Exclusion

According to OneBeacon, the second applicable exclusion of its coverage over the Individual Defendants is the Profit, Advantage or Remuneration Exclusion (the "Profit Exclusion") because the Underlying Complaint is "saturated with the illegal

financial motivations of the Individual Defendants." The issue is whether coverage of the Individual Defendants is excluded because the Underlying Complaint incorporated allegations of profit, advantage or remuneration into Counts III and XI, where such allegations are necessary to maintain those counts. The Profit Exclusion states:

19. Profit, Advantage or Remuneration

> Any "claim" arising directly or indirectly out of, or in any way related to any insured gaining any profit, advantage or remuneration to which that insured is not legally entitled.

A "claim" is defined as an oral or written demand, including a "suit" for payment of money "damages," whereas a "suit" is defined as a civil proceeding alleging "damages" to which this insurance applies.

OneBeacon supports its assertion that allegations in the Underlying Complaint fall under the Profit Exclusion because GSSE claims Harrison illegally accepted bribes that were given to obtain his cooperation, participation, and use of municipal powers in fraud and conspiracy. Likewise, GSSE alleges that Rogers illegally accepted bribes to reward her for, and to obtain her participation in, the fraud and conspiracy. OneBeacon contends that the Profit Exclusion was triggered because these alleged bribes were done to enrich the Individual Defendants and create an opportunity for them to enjoy further bribery.

As observed in *McCook Metals, L.L.C. v. Federal Ins. Co.*, 2007 WL 1687262 (N.D. Ill. 2007), we find *Alstrin v. St. Paul Ins. Co.*, 179 F. Supp.2d 376 (D. Del. 2002) to be persuasive in deciding if the Profit Exclusion applies. In *Alstrin*, the court

found "[t]he proper inquiry, therefore, must focus not only on the factual allegations, but on the elements of the causes of action that are alleged. If an element of the cause of action that must be proved requires that the insured gained a profit or advantage to which he was not legally entitled, then, if proved, this exclusion would be applicable." *Alstrin*, 179 F.Supp.2d at 400. In the instant matter, for the Count III fraud claim to survive, the following elements must be pleaded: (i) a false statement of fact by the defendant; (ii) made with the knowledge that the statement was false; (iii) the defendant intended that the statement would induce the plaintiff to act; (iv) the plaintiff justifiably relied upon the statement; and (v) the plaintiff suffered damages arising from that reliance. *Abazari v. Rosalind Franklin Univ. of Med. & Sci.*, 2015 IL App (2d) 140952, ¶ 14 (citing *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1996)). As for Count XI, the elements of a civil conspiracy claim that a plaintiff must establish are: (i) an agreement between two or more persons; (ii) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means; (iii) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act. *Fritz v. Johnston*, 807 N.E.2d 461, 470 (Ill. 2004), *citing Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994)).

After reviewing the elements of both causes of action, it is evident that GSSE could still have pleaded fraud and civil conspiracy claims regardless of whether the Individual Defendants gained a profit, advantage or remuneration in which they were not legally entitled. Nowhere is profit, advantage or remuneration a requisite element

of either cause of action. Like in *McCook Metals, L.L.C.*, because the Underlying Complaint claims do not require an allegation (or proof) that the Individual Defendants personally profited from illegal conduct, the Profit Exclusion has not been sufficiently triggered. *Id*. at *4. We do not find OneBeacon's contention that at least some of the allegations in the forty-two page Underlying Complaint fall in the Profit Exclusion to be very convincing. There must be more than sporadic general allegations to convince us to apply this exclusion. Liberally construing the Underlying Complaint in the Individual Defendants' favor, with all doubts also resolved in their favor, the Court finds that the allegations fall outside the Profit Exclusion.

### 3. Criminal Acts Exclusion

The language of this exclusion is as follows:

5. Criminal Acts

> Any "claim" arising directly or indirectly out of, or in any way related to a dishonest, malicious, fraudulent, or criminal act, or the willful violation of any statute, ordinance or regulation committed by or with the knowledge of the insured.

> However, we will defend the insured for a "suit" subject to the other terms of this coverage part until either a judgment or final adjudication established such an act or the insured confirms such an act.

> Notably, neither party spends much time arguing for or against the criminal acts exclusion (the "Criminal Acts Exclusion"). OneBeacon merely claims that the Criminal Acts Exclusion is "[b]asically" an "indemnification-only exclusion" and

fails to meet its burden of proving this exclusion applies. Additionally, OneBeacon does not offer a defense to the second paragraph of the Criminal Acts Exclusion, which, in the absence of any other applicable exclusions under the E&O Section, solidifies OneBeacon's duty to defend the Individual Defendants in the state court proceeding. Thus, because none of the exclusions asserted by OneBeacon applies, OneBeacon has the duty to defend the Individual Defendants in the underlying state court proceeding subject to the general E&O provisions.

## B. CGL Section

We must next assess whether OneBeacon had a duty to defend the City of Zion under the CGL Section. It is unnecessary to discuss the impact of the CGL Section on the Individual Defendants because the duty to defend the Individual Defendants is triggered under the E&O Section. Thus, under the CGL Section, the parties' main disagreement rests on whether the Underlying Complaint's breach of contract and claim alleged a "personal and advertising injury" covered under the Policy, and if so, whether any of the exclusions apply.

The City of Zion argues that a personal and advertising injury arose based on a publication (defined in the Policy as any method of announcing or disseminating any material to any third party) because Rogers allegedly made repeated statements and representations to GSSE and the general public, by way of the radio, that construction of the Stadium was ready to begin and would begin shortly. Also, Harrison allegedly represented to GSSE's manager that the Stadium would be built for the 2011 season

and supplied a quote for public distribution about the impending construction, but then claimed publicly that GSSE still owed the City $60,000 in rent from the 2010 season, which contributed to the delay. OneBeacon disagrees, stating that under the CGL Section, "[it] will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply." OneBeacon proclaims that it has no duty to defend the City of Zion because there are no facts pleaded in the Underlying Complaint to support a recovery based on any of the causes of action within the definition of personal and advertising injury in the Policy.

The Policy provides a list of offenses that constitute a personal and advertising injury: (i) false arrest; (ii) malicious prosecution; (iii) wrongful eviction or entry; (iv) publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; (v) publication of material that violates a person's right of privacy; (vi) the use of another's advertising idea in an advertisement; and (vii) infringing upon another's copyright, trade dress or slogan in an advertisement. The City of Zion argues that there are allegations throughout the Underlying Complaint which clearly allege conduct that falls or could potentially fall under the category of a personal and advertising injury—specifically, the "publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" provision. OneBeacon contends that the

only cause of action against the City of Zion is the breach of contract claim, which is not considered a personal and advertising injury.

What OneBeacon must remember is that its duty to defend arises even if only one theory is within the potential coverage of the policy or the allegations fall within at least one of the categories of wrongdoing alleged. It is the Court's duty to look past the labels attached to the state court claims and focus on whether the factual allegations as a whole trigger coverage, and if any exclusions apply. Understandably, the duty to defend is not unlimited, *Amerisure Mutual Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010), because the Court must look at the objective of contract construction, which is to give effect to the intent of the parties. *Gallagher v. Lenart*, 226 Ill. 2d 208, 232 (2007). But OneBeacon's duty to defend "does not depend upon a sufficient suggestion of liability raised in the [Underlying Complaint]; instead, [OneBeacon] has the duty to defend unless the allegations of the [U]nderlying [C]omplaint demonstrate that [GSSE] in the underlying suit will not be able to prove the [City of Zion] liable, under any theory supported by the complaint, without also proving facts that show the loss falls outside the coverage of the insurance policy." *See Am. Econ. Ins. Co. v. Holabird & Root*, 382 Ill. App. 3d 1017, 1022 (2008) (internal quotation marks omitted) (quoting *Ill. Emcasco Ins. Co. v. Nw Nat'l Cas. Co.*, 337 Ill. App. 3d 356, 361 (2003)); *see also Int'l Ins. Co. v. Rollprint Packaging Prods., Inc.,* 312 Ill. App. 3d 998, 1007 (2000) ("[T]he duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the

scope of the policy."). "The question of coverage should not hinge on the draftsmanship skills of whims of the plaintiff in the underlying action." 312 Ill. App. 3d at 1007. Accordingly, although the Court must assess if the Underlying Complaint sets forth sufficient facts to the policy offenses of: (i) slander; (ii) libel; and (iii) disparagement, the allegations in the Underlying Complaint do not need to satisfy all three offenses or each element of a cause of action to establish a policy offense, and thus the duty to defend.

However, "a consequence is not a claim." *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Mead Johnson & Co., LLC*, 735 F.3d 539, 544-45 (7th Cir. 2013) ("Mead is trying to shoehorn one tort—product disparagement, which the insurance policy covers—into another—fraud, which isn't covered."). As in *Mead Johnson*, the City of Zion is trying "to shoehorn" slander, libel and disparagement, which the Policy covers—into breach of contract, which the Policy does not cover. In any event, regardless of whether the Underlying Complaint sufficiently alleges a claim for slander, libel, or disparagement, the breach of contract exclusion would nevertheless preclude OneBeacon's duty to defend the City of Zion under the CGL Section. The breach of contract exclusion in the CGL Section states that coverage is excluded for a:

b. Breach Of Contract

"Personal and advertising injury" arising directly or indirectly out of, or in any way related to breach of contract, except an implied contract to use another's advertising idea in your "advertisement", or any "claim" against any insured arising directly or indirectly out of, or in any way related to tortious interference with a contract or business relations.

Both the "arising directly and indirectly out of, or in any way related to breach of contract" and "or any 'claim' against any insured arising directly or indirectly out of, or in any way related to tortious interference with a contract or business relations" sections apply as exclusions to the instant matter. We note that the Policy's language of "arising directly" and "in any way related to" is quite broad, and that the "core factual allegations" against the City of Zion plainly involve a breach of contract. *Lemko Corp. v. Fed. Ins. Co.*, No. 12 C 03283, 2014 WL 4924403, at *10 (N.D. Ill. Sept. 30, 2014) (finding an exclusion for all claims "based upon, arising from, or in consequence of any actual or alleged infringement" to be "quite broad" and finding that because the "core factual allegations" involved excluded conduct there was no duty to defend the noninfringement claims because "they would not have arisen but for" the infringement claim). Putting labels of the claims in the Underlying Complaint aside, it is evident that the claim *against* the City of Zion, itself, primarily involves a breach of the Olson Contract. We can only read the Underlying Complaint's allegations as expressly relying on the provisions of the Olson Contract and necessarily arising from a breach of contract claim. *See Axiom Ins. Managers*, 876 F. Supp. 2d at 1016-17. Thus, there is no need to decide whether the Underlying Complaint alleged a "personal and advertising injury" within the meaning of the Policy because the breach of contract exclusion in the CGL section relieves OneBeacon of any duty to defend the City of Zion[3]. *Santa's Best Craft, LLC*, 611

---

[3] The Zion Defendants do not assert the exception to the exclusion involving implied contracts.

F.3d at 348; *see also Nautilus Ins. Co. v. 1452-4 N. Milwaukee Ave., LLC*, 562 F.3d 818, 821-23 (7th Cir. 2009) (where contractor-subcontractor policy exclusion covered all "intertwined claims" that provide "an alternative theory of relief" based on the same factual allegations).

Besides the allegations in the underlying breach of contract claim against the City of Zion, we must also assess whether the remaining allegations and claims in the Underlying Complaint incorporate the City of Zion enough to trigger OneBeacon's duty to defend. After review, the Court concludes that the remaining allegations in the Underlying Complaint would not, by themselves, trigger OneBeacon's duty to defend the City of Zion because, as to the City of Zion, they explicitly rely on the breach of the Olson Contract, which we found was subject to the breach of contract exclusion in the CGL Section. Our decision "does not run afoul of the teachings that an insurer cannot avoid its duties of defense and indemnification by reference to the core or dominant character of the plaintiff's allegations, and that the insurer must defend if any conduct alleged in the complaint falls within the insurance policy, even if those allegations are only a "subordinate aspect" of the complaint. *Lemko Corp*, 2014 WL 4924403, at *6 (citing *Curtis-Universal, Inc. v. Sheboygan Emergency Medical Services, Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994)). As to the City of Zion, the remaining allegations in the Underlying Complaint are not a "subordinate aspect" as they are dependent on the breach of the Olson Contract. *See Citizens Ins. Co. of Am. v. Uncommon, LLC*, 812 F.Supp.2d 905, 910 (N.D. Ill. 2011) (holding that IP

exclusion cannot be avoided "by the mere fact that unfair competition, deceptive trade practices, tortious interference, and unjust enrichment claims, as a general matter, can and usually do arise from conduct having nothing to do with trademark infringement"). Thus, OneBeacon has met its burden of establishing that the claims against the City of Zion in the Underlying Complaint, including its general allegations, "[arose] directly or indirectly out of, or in any way related to breach of contract . . ." as outlined in the Policy. *See Citizens Ins. Co. of America*, 812 F. Supp. 2d at 9112. It is clear that the breach of contracts exclusion in the CGL Section applies to all the allegations in the Underlying Complaint that involve the City of Zion, eliminating OneBeacon's duty to defend the City.[4] Because OneBeacon had no duty to defend the City of Zion, it also has no duty to indemnify. *See Natl. Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010) ("If an insurer has no duty to defend, it has no duty to indemnify."). Accordingly, OneBeacon's motion for summary judgment is granted in favor of OneBeacon on Count I as to the City of Zion and otherwise denied.

### III. Coverage Under the Policy for GBC's Counterclaim

In Count III of the Federal Court Complaint, OneBeacon denies it has any duty to defend the City of Zion against GBC's counterclaim under the CGL Section on the basis that it does not allege a personal and advertising injury and is excluded by the "breach of contract" and "contractual liability" exclusions in Coverage B. It denies it

---

[4] There is no reason to discuss the remaining exclusions under the CGL Section.

has any duty to defend the City against GBC's counterclaim under the E&O Section on the basis that the counterclaim is excluded under the "contractual liability" exclusion. In the City of Zion's response to the instant motion for summary judgment, it failed to challenge OneBeacon's motion regarding Count III and explain why the Court should not grant summary judgment in OneBeacon's favor on that count.

GBC's counterclaim alleges that it entered into a ground lease with the City of Zion, which provided that the City "shall use its best efforts to cause a baseball stadium, parking lots and retail space to be constructed," but the City failed to plan or commence building of the Stadium and has no intention of performing its obligation. As a result, GBC alleges that the City of Zion anticipatorily breached the ground lease by not building the Stadium as the lease required and asks for indemnification by the City of Zion for the claims made against GBC by GSSE, pursuant to an indemnification clause in the ground lease. The clause specifically provides that "[t]enant hereby agrees to defend, indemnify and hold Landlord harmless from and against all loss, cost damage and expense (including reasonable fees and costs of counsel selected by Landlord) arising from a breach of this Lease by Tenant." The counterclaim also states that in the event that GSSE recovers any damages from GBC as a result of the City's failure to build the Stadium, GBC is entitled to recover from the City the full amount of any such damages, plus attorneys' fees and costs of defending the lawsuit.

After reading GBC's counterclaim with the Policy, it is clear and free from doubt that the counterclaim falls within the scope of the same applicable contractual exclusions that dismissed OneBeacon's duty to defend the City of Zion in the Underlying Lawsuit. GBC's breach of contract by anticipatory repudiation counterclaim against the City arises directly out of the City's alleged breach of the Olson Contract, and but for this alleged breach, the counterclaim would not exist. Consequently, OneBeacon does not have a duty to defend, or indemnify, the City of Zion against GBC's counterclaim based on the applicable contractual exclusions in the CGL and E&O Sections. We, therefore, grant summary judgment as to Count III of the Federal Court Complaint.

## CONCLUSION

For the aforementioned reasons, OneBeacon's motion for summary judgment is granted on Count I as to the City of Zion, granted on Count III in its entirety, and otherwise denied. Count II remains. The Court declares that OneBeacon has a duty to defend the Individual Defendants in the underlying state court lawsuit, but does not have a duty to defend, or indemnify, the City of Zion in that matter.

Charles P. Kocoras
United States District Judge

Dated: 7/29/2015